as Administrator, Federal Aviation Administration. Mr. Taylor for the Petitioner, Mr. Wright for the Respondent. Good morning, may it please the Court. Good morning. My name is John Taylor. I'm the Pro Se Petitioner in these matters. These cases are challenges to certain FAA regulation regarding recreational model aircraft. One of the regulations creates a mandatory registration process for recreational model aircraft in direct violation of Section 336A of the Modernization and Reform Act. That section created a prohibition on the FAA promulgating rules and regulations regarding recreational model aircraft. That's exactly what the FAA has done here. The FAA's defense to this is that this new Part 48 that they've created to do this is very similar to Part 47 registration that they already had regarding civil aircraft. And this is really just a new and improved faster, slicker way of doing it. That may be the case. I don't believe it is. But even if it is, it's still the adoption of a rule or regulation regarding recreational model aircraft. And it's still prohibited under Section 336A. Section 336A, that violation is really at the heart of my case. And I'm reluctant to move on past it, but I don't really know what more to say about it. Congress specifically said, don't adopt rules and regulations regarding recreational model aircraft. That's exactly what the FAA has done. Well, the FAA's argument, as I understand it, we'll obviously hear from them, is that what they've done essentially is just exercise discretion that they already had with respect to enforcement and that this isn't a new regulation in that sense. I think that's their argument. Well, Your Honor, it's not an amendment. It's rulemaking. Under Section 336B, which is certainly an important part of the statute, they certainly have the power to take enforcement action against people who are actually endangering the navigable airspace. That's not what they're doing here. They're engaging in new rulemaking. And I think that's clearly, this is exactly the sort of thing that Congress must have been contemplating in saying, we don't want you regulating model aircraft. They also say on page 20 of their brief that, well, 336A set forth a prohibition against regulation of certain model aircraft, not all model aircraft. But they don't really seem to press that argument. Well, what's your response to that? Well, Your Honor, if they had carved out the specific aircraft that are covered there and said, well, these don't have to register, but the others do, the regulation would still have a lot of problems, but it wouldn't violate Section 336A. That's not what they've done here. With respect to the timing issue, I'm sorry, the good cause for not proceeding with notice and comment, do you care to say anything about that, or do you just want to rest on your briefs? No, Your Honor, I plan to address that, and I'll address that now. There was no good cause here. This wasn't a situation where there was an emergency situation, as the cases talk about, where a delay would cause a real risk of injury or harm to people. The contention was that Christmas coming was the emergency. Well, Christmas coming was certainly a foreseeable event. If you believe the FAA's explanation here, registration had been required since 1926. They just hadn't been doing it. They certainly could have squeezed in 30 days for notice and comment, but they didn't do that. And then having claimed that this was an emergency, they then didn't make it effective to people who already owned model aircraft for another couple of months. So how could this really have been an emergency? It also didn't protect anyone from any real harm. The FAA's contention is that they really needed this registration process so that they could track model aircraft if somebody does something they shouldn't be doing. Well, I have problems with that in theory, but in practice, it's never been used. I sent them a FOIA request and said, do you have any records of actually tracking model aircraft using this process? Nothing. And the FAA has certainly not come back in their filings and said, well, yes, this has actually been used. It's been important. But isn't it a deterrent? I mean, if someone knows that their model aircraft is on file, then they don't want to fly it someplace where they're in violation of rules or doing something dangerous? Well, the fact of the matter is people who are going to fly recklessly don't register in the first place. Even if they do, all they have to do is remove the registration number and then go fly it. So it doesn't really act as any kind of a deterrent at all. What it does is it creates a – this whole process has created a tremendous amount of confusion in the hobby, certainly. People don't know what's expected of them. They don't know what laws are going to be applied one day to the next. And it's a deterrent to engaging in the hobby. And I think that may be – well, I don't want to speculate on these matters, but that's the only real deterrent. It's no deterrent to flying recklessly, unfortunately. I don't know how you read the language piece so plainly. The Modernization Act talks about in 332 the agency is required to integrate unmanned aircraft systems into the national system. Model aircraft are clearly recognized as unmanned. And they have enforcement obligations under the statute. It's not as clear as you said. And they say that not unreasonable. They always had the authority before the new statute to require registration. I think that the language is just not as clear as you would like. If you have three phrases saying hello and nothing more, that's fine. And you read the Modernization Act in its entirety and couple it with what it's laid onto, I don't think that's so clear. Well, Your Honor, it's important that if you look at – This is unmanned aircraft. If you look at 336, it specifically says notwithstanding any other part of this act. So they're basically saying, you know, you can ignore for this purpose is what we may have said elsewhere. We're telling you, don't adopt the rules and regulations regarding recreational model aircraft. And I think it's important to understand all of these sections in the context of what the FAA was doing at the time. The FAA since 2007 had drawn a clear distinction between civil aircraft, which included in their definition unmanned aircraft that were used commercially. Those were civil aircraft. The recreational model aircraft were something different and apart. You had this dichotomy between the two of them. And I think what Congress is doing in 332 through 336 was codifying what the FAA had been saying. Let me see if I understand the logical implication of what you're arguing right now. Let's suppose the interim final rule said we're only requiring registration of model aircraft that meet the criteria of 336A1 through 5. I'm sorry, we're exempting all of them. But all other recreational model aircraft will have to register. Are you saying, and let's say they did that by notice and comment, so we don't have that issue. Are you saying that they could do that or are you saying that they couldn't? Well, Your Honor, I don't believe that would violate Section 336A. But I think then you get into the issue of whether these are truly aircraft, whether Congress intended to make them civil aircraft and bring the full weight of FAA regulation. As the FAA acknowledges, there are many regulations. Where in the statute can you say then that they wouldn't be able to regulate model aircraft in that fashion? What basis do you have in the statute for that? Not in that statute. I don't believe they would be authorized to do it under the defining statute of what defines aircraft. And the way the FAA has interpreted that. Aircraft is basically anything that flies, right? Well, Your Honor, if that's true, then paper airplanes are aircraft, Frisbees are aircraft. It becomes an unworkable definition and the FAA likes it. Well, not if they define it. Unmanned aircraft can include model. Statutorily, I don't see how you can say otherwise. The fact that you can dream up other possibilities seems to me irrelevant. But unmanned aircraft clearly includes model. Well, Your Honor, if a paper airplane is an aircraft, then it's required by statute to be registered. And someone operating it is required by statute to have an airman's certificate, a pilot's license. If that were true, then they would have been in violation of the statute for the past, what, 80 years? Yes, if you accept the FAA's definition. I mean, you're, I think, going way out on a limb that you don't need to go out on here by making, I think, an extreme argument either that they have to regulate everything or they can regulate nothing. Well, this Congress has said that they have to register, that aircraft have to be registered. So if you're using this definition, then they have to register paper airplanes. Well, they don't have to register, the operators of them have to register. I'm pointing out the absurdity of applying this definition and how it leaves an unworkable definition that no one's going to really know what's real or what's not. I mean, isn't that what agencies do every day is where if the statute has got some imprecision, they exercise their judgment and discretion and expertise to narrow and focus in on the proper definition and scope? Well, there's nothing in the FAA's regulations that exempt paper airplanes and Frisbees. There's nothing in there that, I mean, they don't do that. I don't know that they could under the statute. Nobody really knows where the line is drawn, and I think the FAA likes that. Well, I mean, the regulation as drafted doesn't cover Frisbees and paper airplanes. The interim final rule doesn't. That doesn't, but the statute does. If you accept the FAA's definition of what constitutes an airplane. You don't need to win on this argument, though. I don't believe I do. Yes. The argument is raised in the fear that the FAA would then take Part 47 and say, well, if you don't want to do the online process, you've got to fill out all these forms and bring them in and apply the same way you do a 747. But this has broader ramifications beyond just this one regulation. Thank you. Thank you. Good morning. Abby Wright on behalf of the FAA. I want to start with the goals of the registration rule, which are twofold. The enforcement, the ability to enforce because these unmanned aircraft are not going to be identified, and also to emphasize that one of FAA's goals here was to educate unmanned aircraft users. So when the user purchases an unmanned aircraft and goes to register online, FAA has a direct and immediate ability to educate that user on safe operations, which is crucial because, as we explained in our brief, there are close to 2 million of these operating now. 1.6 million were sold in 2015. Why did Congress put this language in the Act, though? You're not starting with the text of the Act. So I think FAA acknowledges that Congress was limiting its ability to promulgate new regulations in certain respects, but 336A does not repeal the preexisting statutory requirement that aircraft register. But it bars the FAA from doing any rule or regulation regarding model aircraft, unless I'm missing something, is a rule or regulation regarding model aircraft. There was no preexisting rule. Well, there was a preexisting rule for registration, which was Part 47. Of model? It applied to unmanned aircraft as well. FAA required unmanned aircraft to register when granted an exemption. FAA did not extend that requirement to model aircraft. Right. There was no regulation for model aircraft. But there was nothing in Part 47. Part 47 restricted to aircraft. The possibility didn't mean that you exercised it. There was no regulation of model aircraft before this. FAA did regulate model aircraft. I want to be clear about that. So beginning in 2007, FAA said, with respect to public and civil, which means commercially operated or not fitting in the model definition aircraft, you had to get a case-by-case exemption. And then FAA said, for model aircraft, that permission is the advisory circular. So it's not the case that FAA has ever disclaimed authority to regulate model aircraft. I understand, but I thought the point of the statute, reading it, was to bar FAA from doing any new regulations of – FAA agrees that it does bar FAA from imposing new obligations on model aircraft. So, for example, FAA – And that's what this is, though. It's a regulation that was promulgated after the date of this statute, and it regards model aircraft. Our reading of the statute is that it didn't repeal the preexisting statutory requirement. And there's no reason to think that Congress – You didn't have any requirement like this before. Well, the statute said that persons operating aircraft have to – You're saying that there was a possibility. All right, let's assume you're right. But you never acted on that possibility. The statute now says, let's say, you know that you have a prior possibility, so quickly do something. You can claim it to be authorized under the prior possibility, but going forward you can't do anything. That's a bizarre reading of the statute. I don't think it is for two reasons, Your Honor. So we have 336B, which clearly expresses Congress's intent that the FAA will continue to enforce against unmanned aircraft to operate recklessly. I'll continue with your answer, but I read that as hurting your argument. But go ahead with the rest of your answer to Judge Edwards. That's too bad. The FAA cannot enforce when it doesn't know who is operating the unmanned aircraft. And so some of these unmanned aircraft can be operated from up to four miles away. So I can be four miles almost to my house from here that I can be operating an unmanned aircraft. I crash it, I do whatever with it, and FAA has no idea who it belongs to. Well, I think that's a great policy argument, and the statute is surprising to me. Well, I think Congress, I mean, I think subsection B is there, Congress recognizing where there is this preexisting statutory requirement. Congress says nothing about registration in the Modernization Act. It does elsewhere talk about airworthiness certificates. The reason I think it potentially hurts your argument is that it does seem to say, okay, no regulations, but just to be clear, the FAA can continue to do enforcement for safety violations and the like so that there would be no argument that doing such an enforcement action violated 336A. But the two of them together seems like no rules but yes on safety-related enforcement actions. Well, I think Congress must have known that the unmanned aircraft posed a very unique enforcement problem. And if they wanted enforcement actions, registration is a key component of that. Again, you're making a good policy argument. The statute surprises me, but I don't know. I'll go to my second point, which is that the statute is interesting because the way model aircraft is defined is defined based on the functionality of the aircraft, not on whether you can't go on Amazon and search for a model aircraft. It's the same thing. It can be operated under the model aircraft definition. It can be operated commercially. It can be operated simply outside this definition. And so at the time of registration, all you have is the person's, I guess, promise that in the future they won't operate outside the model aircraft definition. Registration takes place when you purchase before you operate. And so it would be very easy for people to say, well, I don't need to register because I'm sure I'll keep operating it within this definition even though I won't really have any education because I won't have registered. And then start to operate outside of the definition and not have registered. And again, an FAA is really hamstrung with enforcement in that case. So explain to me, so that I understand your theory of how to interpret 336A, what work does 336A do? So there are regulations, perspective regulations that FAA acknowledges that could not enact with respect to model aircraft. I mean, the most obvious is FAA couldn't modify the definition of model aircraft. So it couldn't say, well, you've got to have two visual observers or it's got to be under 20 pounds or that sort of thing. FAA also believes it could not, for example, impose limitations on the type of unmanned aircraft. So couldn't say model aircraft can only be aircraft capable of flying under 10 minutes or capable of flying only under 10 miles an hour or other requirements like that. Also couldn't outside restricted flight zones say that model aircraft can only fly during the day. So there are things going forward. So why are those the only things that regard a model aircraft? Well, I think we're not relying on the regard of model aircraft language as much as the preexisting nature of the requirement for registration. What does regarding mean in your view then? Regarding, I think, means affecting a model aircraft. So we haven't really made the argument here that it doesn't affect a model aircraft. Model aircraft have to register under this rule, which is why a petitioner is objecting. But we are relying on the fact that the statutory requirement of registration predated the Modernization Act and Part 47 also predated the Modernization Act. So Part 48. So what does notwithstanding any other provision of law mean? Well, that is specific to provision of law within the Modernization Act. So the Modernization Act directs FAA to. Why does it say that? Well, because. Gil Moody must have been interested. I don't know. Where are you getting these words from? You're just making yourself up. That's not what the statute says. Notwithstanding any other provision of law. Relating to the incorporation of unmanned aircraft systems, including in the subtitle. So what Congress is saying is that in the Modernization Act, Congress directed FAA to engage in specific rulemaking. And the argument could have been made that, in fact, well, you said to engage in this rulemaking, so we can do it for model aircraft. You know, I like my colleague to my right who says it's a very perplexing statute. But you know, it is what it is. And judges get themselves in trouble when we start fooling around. There are some judges that I can point to now, too, who would say, well, this is what Congress said. This is what Congress said. And you have five as good laws as you have. You have a frame. If the model is within these five, you're done. That's that. That's what Congress said. Now, does that make sense? I don't know. But I suspect if I were you, I would find ways to work within those five and come up with regulation that would include safety considerations and squeeze it in within so that it doesn't. But I don't see how you can say the argument is very strange to read. We had the authority before. We didn't exercise it. So there's no preexisting regulation. We never regulated. Now the statute says don't regulate. You had none. Don't do anything unless you meet the five criteria. And you're saying, well, all that means is we can quickly do it now, but going forward we can't. That just doesn't work. I wouldn't write anything like that. I'd be laughed out of business. We can't write something like that. There are two different classes of regulations in our view. So there are the regulations that stem from preexisting statutory requirements that Congress did not repeal in the Modernization Act. Those forward-looking ones are ones FAA might think are a good idea, but Congress has clearly said that there are some things that FAA cannot do. I think we draw a line in a different place than Your Honor is suggesting. What's the preexisting regulation that you're resting on? There isn't any. You're talking about preexisting authority. There is a regulation that covers aircraft that was applied to unmanned aircraft prior to the Modernization Act, and that's what we are relying on. Now, Part 48 provides a way for people to do it easily for $5 online. 700,000 people have registered. 700,000 model aircraft users have registered in addition to their commercial books. In acting a new statute, you're saying there was this preexisting statute for each set of aircraft, and you can read that to include models. You never enforced it that way. Now Congress has come forth and said, no. It's as if to say, unless there's any confusion, no, you cannot regulate in this way, unless you're outside of the five exceptions. Well, imagine, Your Honor, that FAA had not promulgated Part 48, but had instead said, model aircraft, you now have to use Part 47. Under that state of affairs, there would be no promulgation of a rule or regulation. There would simply be a ceasing of the exercise of enforcement discretion and a direction that you need to use Part 47. What FAA did here was say, be realistic and say, 700,000 model aircraft users are not going to go through a paper-based product, paper-based process. We're going to do an online web-based registration system where we can directly educate users, where we can show them our web pages. Again, that's a policy argument. The fact that the thing that you're doing has good effect doesn't mean that the thing is wrong. Well, I agree with you, Your Honor. I agree with you. And we are reading the statute to say that it did not withdraw FAA's authority to require model aircraft. Did the FAA express any views at the time this statute was being considered that you're aware of? I'm not aware of any. I know there is nothing in the legislative history speaking to these issues. This would strike me as something FAA would have been alarmed by, but maybe it was tucked in. There is a lot of new direction in the Modernization Act. It's tucked in in the dark of night before FAA could object, perhaps. So help me understand. I'm just trying to make sure I understand your argument. So in 336A, you're saying that relating to the incorporation of unmanned aircraft systems into FAA plans and policies, that that somehow should be read to mean that the notwithstanding any other provision of law doesn't mean everything in this subsection, but only certain provisions? I'm just trying to understand what your construction is. To be clear, I don't think that provision of the statute is part of our positive argument. I'm arguing as to why it doesn't mean that we couldn't promulgate the Part 48. So notwithstanding any other provision of law relating to the incorporation of unmanned aircraft systems, the Modernization Act has a number of directions for rulemaking, for a roadmap, for a sort of policy outline. And Congress there is saying, imagining that someone would come in and say, well, you've directed this rulemaking for small unmanned aircraft systems, so surely you meant model aircraft too. And so there they're just saying for the Modernization Act, for the directions to the FAA to integrate unmanned aircraft systems in, that doesn't provide you with a separate source of authority there. So again, it's not part of our positive argument, but I was explaining why it doesn't mean, notwithstanding any provision governing aircraft, it's more specific to the integration of unmanned aircraft systems, which was a specific set of rulemaking directions and policy directions. So why didn't the FAA just say, we're going to change how we enforce Part 47, and given 336A, we're just going to require registration of model aircraft? So you're saying why we're requiring it through Part 47? I think it's just a realistic assessment that the agency can provide an alternative means of doing that in a way that people will actually do. Again, the agency charged $5, 700,000 model aircraft users have done it so far. We really operate in an online system now, and it really is just an update of Part 47. I mean, many commentators challenged the FAA's authority to do this prior to promulgating their final rule and cited 336A, and the FAA just kind of waved them all off, right? Well, I think the FAA made the arguments that we made in our brief, which include the fact that the registration requirement was a statutory requirement that predates the Modernization Act. There were a few comments along those lines. The bulk of the comments were directed towards the kind of mechanics of the rule, when it should apply and when it should not apply. There was a lot of discussion about the FAA exempts. If you're under 0.55 pounds, you don't need to register, and so there was a lot of discussion about that. Tell me what you think we can't do going forward, assuming it's a 336. Sure. So FAA believes, for example, that it could not regulate the type of model aircraft, so couldn't say model aircraft, modelers cannot operate, you know, high functionality unmanned aircraft systems, could not say, for example, that outside of restricted zones, model aircraft. But the other thing with respect to registration, you think you can continue to do it going forward? That's right. We think we can require model aircraft to register. So it would be new requirements. You can change it, you can do whatever you want with respect to registration. Well, I don't think we can modify that.  I think FAA could, you know, if the web-based system wasn't working in the right way, could modify that slightly. Your argument is that because of the preexisting statutory requirements, you can do anything you want with respect to registration requirements. Well, I would say we can't go outside of what the statute requires, but we can change the process, the procedures, that sort of thing, which is what Part 48 does, which makes it, you know, something that your average layperson can do, can register, can go online and do that, you know, approximately seven minutes is the time estimate FAA gets for that. So, why, we haven't spent any time wanting to know this in common issue. Is there anything you want to say in addition to what you briefed on that? Sure. I just would point the Court to, it's discussed in the rule, but the incredible increase in the number of unmanned aircraft systems and the increase in the number of safety incidents reported. So, 2014 has a total of 238 safety incidents. August 2015, single month, has almost that many as well. So, what FAA saw in the fall of 2015 is a huge spike in the number of safety, reported safety incidents, and then a huge, so there were 200,000 unmanned aircraft systems operating in 2014. There were 800,000 predicted to be sold in the holiday season in 2015. And so, FAA knew that the enforcement, the need for enforcement was going to increase incredibly and the rule needed to be in place before the holiday season so that FAA would have a way to identify and also to educate those new purchasers of unmanned aircraft systems, a huge number of which had never operated model aircraft or had any experience with aviation at all and just, you know, wake up for Christmas morning, open, you're present. FAA needed a way to reach those people to let them know the serious safety concerns that can be posed by unmanned aircraft systems. And so, that was the good cause provided by FAA. Any further questions? Thank you. There's a second regulation that's subject of a petition here, and that's what's referred to as Advisory Circular 9157A. And what that did in the meaningful part… Are you too late to challenge that? Well, the question is whether there was a justifiable cause for the delay, and I believe there was, and it's tied in with the Administrative Procedure Act issues. Had the FAA published a Notice of Proposed Rulemaking saying that they wanted to adopt a regulation, that the effect of the regulation would be to extend these flight zones to model aircraft, and had I not filed within that time, then I think that would be problematic. But here what the FAA did was they said they were updating an old advisory circular, which can't create new obligations. It's just advice. And they specifically said what they were doing was to give guidance to model aircraft operators. And the previous version, 9157, specifically said that they were just giving guidance. They were seeking voluntary compliance with safety guidelines. So anyone reading this would not have interpreted this… as to what this rule was going to do. If I can move into the substance of the argument on that, these flight zones were created as a post-9-11 initiative, and they specifically in the rulemaking said that they were to address the danger of terrorists hijacking or stealing airplanes and attacking the Washington, D.C. area, or actually the nation's capital. And in establishing the size of these zones, they said they were specifically considering the flight and intercept time that would be necessary for defensive aircraft to reach these aircraft. Those considerations have absolutely no application whatsoever to recreational model aircraft. The FAA acknowledges they never even considered it. In page 35 of their brief, they point out that they didn't consider it because model aircraft are aircraft. Which, as I said, I think if the court were to authorize that and say that they are actually civil aircraft, that would create a lot of confusion and bring down on hobbyists and everyone else a lot of regulations and statutes that can't reasonably be complied with. Okay, we have your argument. Thank you very much. The case is submitted. Thank you.
judges: Kavanaugh, Wilkins, Edwards